```
              UNITED STATES DISTRICT COURT
                       FOR THE
              MIDDLE DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| **PARIS L. JAMES,** | : | |
| Plaintiff | : | No. 1:14-CV-01951 |
| vs. | : | (Judge Kane) |
| **DAVID VARANO, et al.,** | : | |
| Defendants | : | |

## MEMORANDUM

### I. Background

On October 8, 2014, Plaintiff Paris L. James, an inmate at the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal Township") filed a 51-page complaint pursuant to 42 U.S.C. § 1983, against 16 named individual defendants and 14 "John and Jane Doe" defendants, all employees of the Department of Corrections at SCI-Coal Township.

The complaint alleges that in October, 2012, he was denied adequate medical care, subjected to substandard conditions of confinement,[1] subjected to excessive force, and retaliated against for complaining about the quality of the medical treatment, the conditions of confinement, and the excessive force

---

1. With respect to the conditions of confinement, Plaintiff claimed he was denied adequate food and nutrition from the time he arrived at SCI-Coal Township on October 11, 2012, until he was transported to a hospital on October 18, 2012, and that the medical facilities at SCI-Coal Township were not sufficient to address the number of inmates at SCI-Coal Township.

inflicted. Plaintiff alleges that two defendants, Physician Assistants Davis and Daya failed to provide him with adequate medical care and treatment for breathing difficulties, and that they conspired with other Defendants to deprive Restricted Housing Unit ("RHU") inmates of proper intake examinations or access to health care and intentionally refused medical care to reduce transportation costs from the RHU. Plaintiff claims violations of the Eighth and Fourteenth Amendments to the United States Constitution. On September 25, 2015, the court accepted Plaintiff's amended complaint. On August 31, 2016, this court granted in part and denied in part Defendants' motions to dismiss. (Doc Nos. 55, 56.)[2] The court dismissed Plaintiff's conspiracy claims, equal protection claims and the condition of confinement claims[3] but permitted the Eighth Amendment claims of deliberate indifference to a serious medical need to proceed. The court dismissed the verbal harassment, retaliation and conspiracy claims except with respect to Defendants Mosier, Tripp and Else; the court dismissed the equal protection claims; and the court dismissed the condition of confinement as well as the medical care claims asserted against Defendants Verano and McCarthy on the basis of lack of personal involvement.

---

2. The allegations of the amended complaint as well as the reasons for the court's disposition of the motions are set forth in detail in a 46-page memorandum. (Doc. No. 55.)

3. The court noted that the claims against Defendants Davis and Daya for alleged inadequate medical facilities was not cognizable. (Doc. No. 55, at 39 n.6.)

Pending before the court is a motion filed on May 9, 2016, entitled "Motion for Order to Show Cause and Temporary Restraining Order and or Preliminary Injunction." (Doc. No. 49.) Along with the motion, Plaintiff filed a supporting brief (Doc. No. 50) and an unsworn declaration under penalty of perjury. (Doc. No. 51.) Subsequently, on June 6, 2016, Plaintiff filed a second declaration which reiterates some of the information set forth in the first one. (Doc. No. 54.) In the first declaration Plaintiff alleges that:

> (1) he is subject to threats of harm against his physical safety and taunts, which impede his access to the law library;
>
> (2) corrections personnel will not enforce a separation between him and the numerous defendants he sued; and
>
> (3) on February 21, 2016, he had a serious "psychiatric episode" during which time he was subjected to oleoresin ("OC") spray and an unnecessary use of force and was not properly decontaminated afterword;
>
> (4) on February 21, 2016, medical personnel made an "ineffective effort" to provide him with his asthma inhaler, which he could not use on his own because his airways were obstructed by mucus from the OC spray; and
>
> (5) since February 21, 2016, he has been housed in the restrictive housing unit where he has been deprived of his inhaler causing him unnecessary pain and suffering

and preventing him from being able to work out physically.

(Doc. No. 51, ¶¶ 6-13.) Plaintiff seeks as relief (1) an order that he be given his inhaler and the ability to retain it in his cell; (2) he be separated from all defendants; and (3) he not be subjected to sensory deprivation caused by 24 hour illumination in his cell. (Id. at ¶ 15.) The second declaration as noted is a reiteration of the first.

On May 20, 2016, the Corrections Defendants filed a brief in opposition along with evidentiary materials, including a declaration under penalty of perjury from Thomas S. McGinley, the Superintendent at SCI-Coal Township. (Doc. No. 52.) The declaration of Superintendent McGinley and the evidentiary materials assert that Plaintiff was taken to the medical department after having been exposed to OC spray; while seated in the medical department Plaintiff ignored staff direction and yelled unintelligible sounds for unknown reasons; Plaintiff continually asked for water not his inhaler; nurses attempted to provide him with his inhaler; a nurse attempted to place it in his mouth at which point Plaintiff jerked his head back to avoid the medication; and the nurse a second time attempted to place the inhaler in his mouth and Plaintiff remained uncooperative. (Doc. 52, at 12.) Superintendent McGinley in his declaration indicates that he viewed the videotape of the incident and further states in pertinent part as follows:

>   7.  Some inmates in the Restrictive Housing Unit are not permitted to retain their asthma inhalers on their person; in those cases, the inhalers are kept near the unit at the officers' station.
>
>   8.  Inmates with mental health issues, such as Plaintiff, are among those who may not be permitted to maintain their inhalers.
>
>   9. This is in accordance with policy which leaves it to the discretion of prison official whether to allow inmates to possess their own medications for self-administration.
>
>   10.  Among the concerns with allowing these inmates to retain their inhalers are substance abuse, breaking the plastic off the inhaler and using it to self-mutilate and using the inhaler to facilitate an outside hospital trip.

(Id. at 11.) Plaintiff's motion for a preliminary injunction became ripe for disposition on June 6, 2016, when he filed a reply brief. (Doc. No. 53.) For the reasons set forth below, Plaintiff's motion for a preliminary injunction will be denied. The court will also address in this memorandum several other motions filed by Plaintiff and the Defendants.

## II. Plaintiff's Motion for Preliminary Injunction

### A. Legal Standard for the Issuance of a Preliminary Injunction

Preliminary injunctive relief is extraordinary in nature, and is discretionary with the trial judge. Orson, Inc. v. Miramax Film Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993) (citing Skehan v. Board of Trustees of Bloomsburg State College, 353 F. Supp. 542 (M.D. Pa. 1973)). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third

Circuit must consider the following four factors: (1) the likelihood that the applicant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the conduct complained of; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. Bimbo Bakeries USA, Inc. V. Botticella, 613 F.3d 102, 109 (3d Cir. 2010); S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)); Instant Air Freight v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989); Premier Dental Prods. Co. v. Darby Dental Supply Co., 794 F.2d 850, 852 (3d Cir.), cert. denied, 479 U.S. 950 (1986).

The burden of introducing evidence to support a preliminary injunction is on the moving party with respect to the first two factors. Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994); Neo Gen Screening, Inc. V. TeleChem Intern, Inc., 69 F. App'x 550, 554 (3d Cir. 2003). An absence of either of the first two factors warrants the denial of a request for preliminary injunctive relief. Id.; Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000)("In order to obtain a preliminary injunction, plaintiffs must show both (1) that they are likely to experience irreparable harm without an injunction and (2) that they are reasonably likely to succeed on the merits.").

The United States Court of Appeals for the Third Circuit has defined irreparable injury as "potential harm which cannot be redressed by a legal or equitable remedy following a trial." <u>Instant Air Freight</u>, 882 F.2d at 801.  A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm."  <u>Id.</u>  The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunction is to be issued.  <u>SI Handling Sys., Inc. v. Heisley</u>, 753 F.2d 1244, 1264 (3d Cir. 1985).

Also, because the purpose of preliminary injunctive relief is to prevent irreparable injury pending the resolution of an underlying claims on the merits, the injury claimed in the motion for preliminary injunctive relief must relate to the conduct alleged and permanent relief sought in the plaintiff's complaint. The Court of Appeals for this circuit has recognized that there must be a connection between the underlying complaint and the relief requested in the motion for a preliminary injunction. <u>Ball v. Famiglio</u>, 396 F. App'x 836, 837 (3d Cir. 2010).  The Court of Appeals stated the following:

> We have jurisdiction to review the denial of preliminary injunctive relief pursuant to 28 U.S.C. § 1292(a)(1). We do so for abuse of discretion, though we review underlying conclusions of law de novo. See <u>Adams v. Freedom Forge Corp.</u>, 204 F.3d 475, 484 (3d Cir.2000). A preliminary injunction is an extraordinary remedy, and the party seeking it must show, at a minimum, a likelihood of success on the merits and that they likely face irreparable harm in the absence of the injunction. <u>See id.</u> As these elements suggest, there must be "'a

>relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" Little v. Jones, 607 F.3d 1245, 1251 (10th Cir.2010) (quoting Devose v. Herrington, 42 F.3d 470, 471 (8th Cir.1994)); see also Adams, 204 F.3d at 489–90 (affirming denial of injunction where plaintiffs' harm was "insufficiently related to the complaint and [did] not deserve the benefits of protective measures that a preliminary injunction affords").

Id.; see also Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir.1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit.") (citing De Beers Consol. Mines v. United States, 325 U.S. 212, 220 (1945)). "In sum, a federal district court lacks jurisdiction over claims raised in a motion for injunctive relief where those matters are unrelated to the underlying complaint." Stewart v. Verano, 2015 WL 1636124, at *2 (M.D.Pa. April 8. 2015).

### B. Discussion

The relief requested by Plaintiff, as stated earlier, is as follows (1) an order that he be given his inhaler and the ability to retain it in his cell; (2) he be separated from all defendants; and (3) he not be subjected to sensory deprivation caused by 24 hour illumination in his cell. Based on the un-rebutted evidentiary materials submitted by Defendants, it appears that Plaintiff cannot demonstrate likelihood of success on the merits of his claim.

Defendants presented evidence that reveals that Plaintiff's inhaler is available on the cell block where he is located; a nurse will administer the inhaler when he is in need of it; he has been obstructive in the past when a nurse attempted to administer the inhaler; he has psychiatric problems which prevent him from maintaining the inhaler in his cell; and there are legitimate security and safety reasons for not allowing an inmate such as Plaintiff to maintain an inhaler on his person or in his cell.

As for his request that he be separated from Defendants, there are no evidentiary materials presented by Plaintiff which reveal that he has had ongoing contact with the remaining Defendants named in his amended complaint which has prejudiced his civil action. Furthermore, to the extent that Plaintiff claims that he has been taunted by some of the Defendants, mere verbal threats and even abusive racial threats do not in the context of a prison violate an inmate's rights under the United States Constitution. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."). Mere threatening language and gestures of a custodial officer do not,

9

even if true, amount to constitutional violations.  Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973); see also Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.).  A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fourteenth Amendment's substantive due process clause, see Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991).

Moreover, the decision to separate an inmate from another inmate or a correctional officer has always been within the discretion of corrections officials.  See, e.g., Bell v. Wolfish, 441 U.S. 520, 547 (1979)(Courts, in evaluating the conduct of prison officials, must accord prison administrators "wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") Shaw v. Murphy, 532 U.S. 223, 229 (2001) ("the problems of American prisons are complex and intractable ones," and courts are ill equipped to deal with them); Meachum v. Fano, 427 U.S. 215, 225 (1976) ("Transfers between institutions, for example, are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate").

With respect to the claim that Plaintiff is subject to 24-hour illumination in his cell this claim was not raised in the amended complaint and, consequently, there is no likelihood of success on the merits. In fact, all of Plaintiff's requests for preliminary injunctive relief are unrelated to the underlying claims set forth in the amended complaint which involve conduct which occurred in October, 2012, because Plaintiff did not make a request for injunctive relief in the amended complaint. (Doc. No. 28, 60-65, ¶¶ 290-356.)  The impetus for the requests for injunctive relief occurred over 3½ years later in February, 2016. Because the injunctive relief sought is separate from the allegations of the underlying amended complaint, Plaintiff cannot demonstrate that there is a likelihood of success on the merits.[4] See Ball v. Famiglio, supra.

### III.     Plaintiff's Motion to Amend the Amended Complaint to Identify Some of the "John Doe" Defendants

On January 11, 2017, Plaintiff filed a motion entitled "Plaintiff's Motion to Amend Plaintiff's Amended Complaint to Identify the Identity of Previously Named John Doe Defendants Which Shall Hereinafter Reflect the Identities of Defendant Bleow." (sic) (Doc. No. 71.)  Plaintiff indicates that as a result of discovery he has identified (1) "John Doe #3" as Sergeant Rod Romig and that Sergeant Romig is named in paragraphs 24, 71

---

4.  Plaintiff is not prevented from filing a new civil action relating to the events which occurred in February, 2016.

through 76, 78 through 82, 85, 92 through 94, 96, 98, 100 through 101, 103 through 104, 106 through 107, 195, 248 through 249, 266 through 271, 278, 288 through 289 and 333 through 334 of the amended complaint; (2) "John Doe #4" as Correctional Officer Scott Segedy and that Correctional Officer Segedy is named in paragraphs 25, 71 through 76, 78 through 82, 85, 92 through 94, 96, 98, 100 through 101, 103 through 104, 106 through 107, 195, 248 through 249, 266 through 271, 278, 288 through 289 and 333 through 334 of the amended complaint; (3) "John Doe # 10" as Registered Nurse Matt Hyde and that RN Hyde is named in paragraphs 10, 126 through 137, 139, 146 through 150, 152, 195, 260 through 266, 270 through 273, 275, 288 through 289, and 303 through 304 of the amended complaint; and (4) "John Doe #11" as Correctional Officer Paul Goodwin and that Correctional Officer Goodwin is named in paragraphs 31, 162 through 163, 188 through 189, 193, 195, 266 through 268, 270 through 271, 278, 288 through 289 and 347 through 348 of the amended complaint.

Plaintiff requests that the amended complaint (Doc. No. 28) be served by the United States Marshall on Defendants Romig Segedy, Hyde and Goodwin. As noted in the background of this memorandum the court granted in part and denied in part Defendants' motions to dismiss the amended complaint. In the memorandum and the accompanying order the court granted Plaintiff a period of time to identify the "John Doe" Defendants. Consequently, the court will (1) grant Plaintiff's motion to amend

the amended complaint to identify "John Doe #s 3, 4, 10, and 11" and (2) direct the United States Marshal to serve the amended complaint, and this memorandum and accompanying order, on Defendants Romig, Segedy, Hyde and Goodwin. The court will not require Plaintiff to file a second amended complaint but "John Doe #s 3,4, 10 and 11 will be hereinafter identified as set forth above.[5]

### IV.  Plaintiff's Motion to Compel Responses to Interrogatories and Corrections Defendants' Motion to File Second Amended Answer to Amended Complaint

On January 25, 2017, Plaintiff filed a motion to compel discovery. (Doc. No. 72.) On February 2, 2017, Defendants, not including Physician Assistants Davis and Daya, filed a motion to amend their answer to paragraph 43 of Plaintiff's amended complaint.  These two motions are interrelated.

In the motion to compel discovery, Plaintiff requests that Defendant Masser be ordered to identify "John Doe #s 1 and 2."  In paragraph 43 of the amended complaint, Plaintiff alleges that he was transported from SCI-Forest to SCI-Smithfield on October 11, 2012, where he was turned over to "John Doe #s 1 and 2 for transport to SCI-Coal Township.  Plaintiff contends that those two "John Does" then transported and delivered him to SCI-Coal Township on October 11, 2012.  Upon arrival at SCI-Coal Township Plaintiff alleges that Defendant Masser had interaction with "John

---

5.  Plaintiff indicates in the amended complaint that these four defendants are employed at SCI-Coal Township.

Doe #s 1 and 2." (Doc. 28, at 14, §81.) In Defendant Masser's opposition brief (Doc. No. 77) to the motion to compel Masser claims that no such transport occurred on October 11, 2012. However, in the amended answer to the amended complaint (Doc. No. 64), Defendants admitted that Plaintiff was transferred from SCI-Forest to SCI-Coal Township on October 11, 2012, with an intermittent stop at SCI-Smithfield. (Doc. No. 60, at 4, ¶ 43.)

In the motion to file a second amended answer to the amended complaint Defendants now claim there was no such intermittent stop at SCI-Smithfield and request that they be permitted to amend their answer to paragraph 43 to state as follows: "It is admitted that Plaintiff was transferred from SCI-Forest to SCI-Coal Township. The remaining allegations are denied as stated. By way of further answer, this allegation does not concern answering defendants."

First, the court will allow Defendants to amend their answer to paragraph 43 of Plaintiff's amended complaint but the court discerns no reason why Defendant Masser who had interaction with "John Doe #s1 and 2" on October 11, 2012, is unable to identify them and the fact that there allegedly was no intermittent stop at SCI-Smithfield on October 11, 2012, should not prevent Defendant Masser from identifying the correctional officers who delivered Plaintiff to SCI-Coal Township. Consequently, the court will direct that Defendant Masser fully

answer Plaintiff's interrogatories relating to the identity of "John Doe #1 and 2."

## V. **Plaintiff's Motion to Stay and Defendants' Motion to Suspend Summary Judge Deadline**

On February 8, 2017, Plaintiff filed a document entitled "Motion to Stay" (Doc. No. 78) which in essence is a motion to extend the discovery deadline as well as the dispositive motions deadline. Also, on February 28, 2017, Defendants filed a document entitled "Corrections Defendants' Motion to Suspend Summary Judgment Deadline." In light of the above, the court will grant these two motions and set a new discovery deadline and dispositive motions deadline.

An appropriate order will be entered.