UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PARIS L. JAMES,
    Plaintiff,

v.

DAVID VARANO, et al.,
    Defendants

No. 1:14-CV-01951

(Judge Kane)

# MEMORANDUM

Presently before the Court is Plaintiff Paris James' motion to compel discovery. (Doc. No. 80.) For the reasons set forth below, the motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff, an inmate at the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal Township"), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983, against 16 named individual defendants and 14 "John and Jane Doe" defendants, all employees of the Department of Corrections at SCI-Coal Township.

In his complaint, Plaintiff alleges that two defendants, Physician Assistants Davis and Daya, failed to provide him with adequate medical care and treatment for breathing difficulties, and that they conspired with other Defendants to deprive Restricted Housing Unit ("RHU") inmates of proper intake examinations or access to health care, and intentionally refused medical care to reduce transportation costs from the RHU. (Doc. No. 28.) Plaintiff claims violations of the Eighth and Fourteenth Amendments to the United States Constitution. (Id.) Subsequently, the Court dismissed Plaintiff's conspiracy claims, equal protection claims, and condition of confinement claims, but permitted the Eighth Amendment claims of deliberate indifference to a serious medical need to proceed against Defendants Davis and Daya. (Doc. No. 56.)

Along with his motion to compel, Plaintiff has filed a supporting brief (Doc. No. 81), a declaration (Doc. No. 82), and exhibits (Doc. No. 83), which include the discovery documents propounded upon Defendants. Defendants have filed a brief in opposition together with evidentiary materials detailing their responses to Plaintiff's discovery requests. (Doc. No. 84). Having been fully briefed, this discovery matter is now ripe for disposition.

## II.   DISCUSSION

### A.   Legal Standard

Federal Rule of Civil Procedure 26(b)(1), as amended, defines the scope of discovery as follows:

> **(1) Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The 2015 amendment to Rule 26 reinforces the shared obligation of the parties, counsel, and the court to consider the proportionality of all discovery and consider it in resolving discovery disputes." Employers Ins. Co. of Wausau v. Daybreak Express, Inc., No. 2:16-CV-4269-JLL-SCM, 2017 WL 2443064, at *2 (D.N.J. June 5, 2017). Thus, under the present amendment, to be deemed discoverable, the matter sought to be discovered must be: (1) relevant to the party's claim or defense; (2) non privileged; and (3) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

A matter is "relevant 'if it has any tendency to make a fact more or less probable that it would be without the evidence' and 'the fact is of consequence in determining the

action.'"  In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig., No. 13-MD-2445, 2016 WL 3519618, at *3 (E.D. Pa. June 28, 2016) (quoting Fed. R. Evid. 401). "This concept of relevance is tempered . . . by principles of proportionality," which include: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, (6) and whether the burden of expense of the proposed discovery outweighs its likely benefit. Fassett v. Sears Holdings Corp., No. 4:15-CV-00941, 2017 WL 386646, at *3 (M.D. Pa. Jan. 27, 2017) (citation omitted); Fed. R. Civ. P. 26(b)(1).

"Federal courts employ a burden-shifting analysis to resolve discovery disputes. Employers Ins. Co. of Wausau v. Daybreak Express, Inc., No. 2:16-CV-4269-JLL-SCM, 2017 WL 2443064, at *2 (D.N.J. June 5, 2017). Specifically, a party seeking to compel discovery under Federal Rule of Civil Procedure 37 bears an initial burden of demonstrating that "the information sought is relevant to the subject matter of the action." Id. (citation omitted). The burden then shifts to the objecting party to show, in specific terms, why the discovery request is improper. Hicks v. Big Bros./Big Sisters of Am., 168 F.R.D. 528, 529 (E.D. Pa. 1996).

Decisions relating to the scope of discovery under Rule 26, and the extent to which discovery may be compelled, are matters committed to the sound discretion of the court, and will be disturbed only upon a showing of an abuse of discretion. Marroquin–Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983); Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).

Guided by the above standards, the Court turns to Plaintiff's motion to compel.

B.  **Motion to Compel**

In his supporting brief, Plaintiff requests that Defendants be compelled to answer completely Plaintiff's first set of interrogatories and requests for admission propounded upon Defendant Davis, and Plaintiff's first and second set of interrogatories and Plaintiff's requests for admission propounded upon Defendant Daya.

i.  **First Set of Interrogatories**

The first set of interrogatories submitted to both Defendants includes a total number of 25 interrogatories. While Plaintiff requests full and complete responses to every single interrogatory in this set, the arguments he raises in his motion to compel primarily concern the first two interrogatories. Those two interrogatories, and Defendants respective and identical answers, are as follows:

> Interrogatory 1: State and identify the standard policy and procedures for examination of inmates upon reception at a new Facility after transfer, this includes but is not limited to intake procedures.
>
> Objection. This question is not reasonably calculated to lead to admissible evidence with respect to the only remaining claim deliberate indifference against the answer defendant. This question is not directed to the conduct to the answering defendant. Without waiver of the objection the information responsive to this question is in the possession of the Department of Corrections which is the entity that does intake screening.
>
> Interrogatory 2: State and identify what the policy, standard and procedures are for the collection of blood samples from inmates once such diagnostic testing has been ordered, more specifically identify the exact procedures which take place upon reception or issuance of such testing order.
>
> Objection. This question is not reasonably calculated to lead to admissible evidence with respect to the only remaining claim deliberate indifference against the answer defendant. This question is not directed to the conduct to the answering defendant. Without waiver of the objection the information responsive to this question is in the possession of the Department of Corrections which is the entity that does intake screening.

(See Doc. No. 84-1 at 2 and 8.)

Defendants object to the information sought on two bases. First, the inquiry seeks information beyond the scope of the limited issues remaining. Second, the information responsive to Plaintiff's requests is not in Defendants' possession. The Court finds that the motion to compel is properly denied on both grounds. See generally Harris v. Koenig, 271 F.R.D. 356, 371 (D.D.C. 2010) ("Lack of evidence showing that producing party is in fact in possession of a document is grounds to deny a motion to compel.") (citations omitted); Fed. R. Civ. P. 34 (instructing that parties are only bound to produce documents already in existence or in their "possession, custody, or control").

The Court must also deny Plaintiff's motion to compel insofar as Plaintiff challenges the responses to interrogatories 3 through 10, 12 through 14, 17 through 21, 23, 24, and 25. Those interrogatories are as follows:

> Interrogatory 3: State and identify the exact number of beds which are available within the infirmary at SCI-Coal Township to treat inmates on site, more specifically identify not only the exact number of beds, but this includes the number of cells and all other treatment facilities within the infirmary during the period between October 2012 through January of 2016.
>
> Interrogatory 4: State and identify any and all additions which have been made to the medical department at SCI-Coal Township since its initial creation.
>
> Interrogatory 5: State and identify the standard policy, procedure for placement of inmates in psychiatric observation cells "POC", this includes but not limited to inmates housed in the restricted housing unit "RHU", and if the procedures are different between "RHU" inmates and general population inmates state and identify the difference of both procedures.
>
> Interrogatory 6: State and identify if the policy standard and procedures for in-take of new receptions are different for "RHU" inmates and general population classified inmates, if in-take procedures are different for those class of inmates identify both procedures.
>
> Interrogatory 7: State and identify who the medical nurse is identified as RN John Doe #10, who on October 11, 2012 came to the strip cage within the "RHU" this includes but is not limited to RN John Doe #10 identity being revealed through duty Jog books [sic], as to who was on duty on October 11, 2012 and through signing in duty Jog books contained within the "RHU".

Interrogatory 8: State and identify the standard, policy practice and procedure for the provision or issuance of medical assisting devises, which includes but is not limited to "asthma inhalers" when an inmate arrives at a new facility without possession of the devise."

Interrogatory 9: State and identify whether level 5 inmates are examined within the prisons infirmary upon reception for medical stability or is it standard practice policy and procedure to delay such examinations until a later period, and only after the inmates been signed into the "RHU".

Interrogatory 10: State and identify the policy, practice, standard and procedure for provision of immediate medical care during transport of an inmate between Correctional Facilities, more specifically if an inmate requires and complaints [sic] of medical distress what are the immediate medical steps taken to provide such care without inordinate delay.

Interrogatory 12: State and identify the number of inmates who were housed in the infirmary on October 11, 2012 at SCI-Coal Township which includes but not limited to the number of inmates housed in "POC" cells, state without identifying the inmate's identity.

Interrogatory 13: State and identify the policy, standard, practice and procedure for sick-call within the "RUU" restrict housing unit, more specifically state whether inmates are physically examined within their cells through the door, or if inmates are taken to an appropriate area to physically examine them, if your response is that inmates aren't taken out their cell identify what the circumstances are which require physically [sic] examines.

Interrogatory 14: State and identify the policy standard, practice and procedure is for conducting medical observation of inmates, this includes but is not limited to how often the inmate is seen and the recording procedures of such motoring [sic].

Interrogatory 17: State and identify whether SCI-Smithfield maintains an adequate medical facility to have assisted, treated and examined or diagnosed Plaintiffs complaints of shortness of breath, dizziness, dehydration rapid and irregular heart rate.

Interrogatory 18: State and identify the exact distance between the in-take area at SCI-Coal Township and the prisons infirmary, this includes but is not limited to identifying the distance between in-take and the "RHU" restricted housing unit.

Interrogatory 19: State and identify what the standard, policy practice and procedure is for provision of medical care during "intra-facility transfers".

Interrogatory 20: State and identify what the standard, policy practice and procedure is for placement and treatment of "RHU" inmates who require infirmary care/housing this includes but is not limited to in-patient and out-patient care.

> Interrogatory 21: State and identify what the policy, standard, practice and procedure is for use of force against an inmate with diagnosed medical condition which includes but not limited to inmates with "asthma."
>
> Interrogatory 23: State and identify Defendant RN Jane Doe #1, this includes but not limited to her title and position at SCI-Coal Township.
>
> Interrogatory 24: State and identify whether regular infirmary cells are used or if "POC" cells are used as substitute as infirmary housing.
>
> Interrogatory 25: State and identify whether "POC" cells are properly equipped with adequate beds, emergency call buttons and other amenities required for treatment of patients who are housed under infirmary classification.

The Court is unable to discern the relevance of these interrogatories as it relates to Plaintiff's Eighth Amendment deliberate indifference claim against answering Defendants, especially considering that a majority of these interrogatories appear to be requesting information regarding DOC policies and procedures.

As it pertains to interrogatories 11, 15, 16, and 22, however, the Court finds unpersuasive Defendants' contention that these interrogatories are not reasonably calculated to lead to admissible evidence, and that they are not directed to the answering Defendants. Specifically, these interrogatories request the following information:

> Interrogatory 11: State and identify whether there exist [sic] a standard, policy, practice or procedure to adequately resolve disputes between medical personal [sic] as to the form of treatment to explore, more specifically how are treatment issues and disputes among medical personal resolved when one medical staff member decides or orders a treatment course and another disagrees, how does effective care get achieved.
>
> Interrogatory 15: State and identify what the policy, standard practice and procedure is which is to be followed upon notice, observation to or by medical personnel that an inmate isn't eating or drinking.
>
> Interrogatory 16: State and identify what the standard, policy practice and procedure is for the treatment of an individual who complains of shortness of breath, dizziness, rapid or irregular heart rate.
>
> Interrogatory 22: State and identify whether Plaintiff is currently receiving treatment for his asthma, this includes but not limited to whether Plaintiff actively utilizes and has been proscribed [sic] an asthma inhaler, more specific identify since plaintiffs housing at SCI-Coal Township identify when Plaintiff was first issued an asthma

inhaler and the date if any as to when or if an order has been issued to discontinue that inhaler.

As set forth above, courts interpret relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Sanders, 437 U.S. at 350-51. Here, unlike the previous interrogatories, interrogatories 11, 15, 16, and 22, appear to be tailored to the individual answering Defendants as it relates to Plaintiff directly. Indeed, Plaintiff's requests appear to be reasonably calculated to lead to admissible evidence as to the remaining claim of deliberate indifference against the answering Defendants. Given that these interrogatories bear a relation to the remaining claim of deliberate indifference against the answering Defendants, the Court will overrule Defendants' objections and direct Defendants to provide a response to the same.

### ii. Requests for Admission

As it relates to Plaintiff's motion to compel Defendant Daya's answers to his requests for admission, the Court's review of Defendants' brief in opposition to the motion to compel, and exhibits attached thereto, reveals that Defendant Daya has in fact responded to Plaintiff's requests for admission. Insofar as Plaintiff argues that Daya is precluded from raising any objections in her answers due to an alleged untimely response, Plaintiff has made no showing of prejudice caused by Defendant Daya's purported delay in responding to his discovery request. Accordingly, Plaintiff's motion to compel with regard to Defendant Daya's answers to the requests for admission will be denied as moot.

### iii. Second Set of Interrogatories

Finally, Plaintiff requests that the Court compel Defendant Daya to answer his second set of interrogatories containing an additional twenty-two (22) interrogatories. Defendant Daya objects on the basis that these requests run afoul of Federal Rule of Civil Procedure 33(a)(1).

The Court agrees with Defendant. Rule 33(a)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 33(a)(1). Given that Plaintiff has already propounded 25 written interrogatories upon Defendant Daya and there has been no stipulation, order, or leave to serve more than that as prescribed by the Federal Rules of Civil Procedure, Defendant Daya's objection will be sustained.

### III. CONCLUSION

Based on the foregoing, Plaintiff's motion to compel (Doc. No. 80), will be granted in part and denied in part. An appropriate Order follows.