IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PARIS L. JAMES, : | |
|     Plaintiff, : | |
| : | No. 1:14-cv-01951 |
| v. : | |
| : | (Judge Kane) |
| DAVID VARANO, et al., : | |
|     Defendants : | |

**MEMORANDUM**

**I. BACKGROUND**

Pro se Plaintiff Paris L. James ("James"), initiated the above-captioned action on October 8, 2014 by filing a complaint pursuant to 42 U.S.C. § 1983 against numerous employees of the Department of Corrections ("DOC"), at the State Correctional Institution at Coal Township, Pennsylvania ("SCI Coal Township").[1] (Doc. No. 1.) On March 23, 2015, James filed an amended complaint. (Doc. No. 28.) In his amended complaint, James claimed that he was denied adequate medical care, subjected to substandard conditions of confinement, subjected to excessive force, and retaliated against for complaining about the quality of his medical treatment, the conditions of his confinement, and the excessive force inflicted upon him. (Id.) James further alleges that the Medical Defendants failed to provide him with adequate medical treatment for breathing difficulties. (Id.) He also claims that the Medical Defendants conspired with other Defendants to deprive inmates housed in the Restricted Housing Unit ("RHU") of proper intake examinations and access to healthcare, and intentionally refused them medical care in order to reduce transportation costs from the RHU. (Id.)

---

[1] Defendants include the "Medical Defendants" Physician Assistants Brian Davis ("Davis") and Jennifer Daya ("Daya"), and the "Corrections Defendants," who are Mains, Schmerfeld, Alleman, Romedy, Segedy, Masser, Baker, Schoch, Krzykowski, Rodriguez, Burrows, Novailis, Kratz, Hyde, Goodwin, Mosier, Tripp, and Else.

Subsequently, all Defendants filed motions to dismiss the amended complaint. (Doc. Nos. 30, 31.) By Memorandum and Order dated August 31, 2016, the Court granted in part and denied in part Defendants' motions to dismiss. (Doc. Nos. 55, 56.) The Court dismissed James' conspiracy claims, equal protection claims, and claims as to the condition of confinement, but permitted the Eighth Amendment claims of deliberate indifference to a serious medical need to proceed. (Id.) The Court also dismissed James' verbal harassment, retaliation, and conspiracy claims, with the exception of those pertaining to Defendants Mosier, Tripp, and Else, and dismissed James' condition of confinement claim and the medical care claims asserted against Defendants Varano and McCarthy on the basis of lack of personal involvement. (Id.) Accordingly, the Court discerned that the remaining claims against the Correction Defendants were a claim for deliberate indifference to a serious medical need against Mains, Schmerfeld, Alleman, Romedy, Segedy, Masser, Baker, Schoch, Krzykowski, Rodriguez, Burrows, Novailis, Kratz, Hyde, and Goodwin and a claim based on retaliation, verbal harassment, and conspiracy against Moser, Tripp, and Else. The remaining claim against the Medical Defendants pertained to a deliberate indifference to a serious medical need.

After the close of discovery, the Medical Defendants and the Corrections Defendants filed motions for summary judgment (Doc. Nos. 103, 113), along with statements of material facts (Doc. Nos. 104, 115), and supporting briefs (Doc. Nos. 105, 114). In response to the Medical Defendants' summary judgment filings, James filed a motion in opposition (Doc. No. 110), declaration in opposition (Doc. No. 110-1), and counterstatement of material facts (Doc. No. 111). The Medical Defendants filed a reply brief (Doc. No. 117), to which James filed an unauthorized sur-reply brief (Doc. No. 123), which the Court struck from the record in an Order dated December 12, 2017 (Doc. No. 131).

In response to the Corrections Defendants' summary judgment filings, James filed a motion in opposition (Doc. No. 118), counterstatement of material facts (Doc. No. 119), and brief in support of his counterstatement of facts (Doc. No. 120). The Corrections Defendants subsequently filed a reply brief (Doc. No. 128), to which James filed an authorized sur-reply (Doc. No. 132), and also an "amended response in opposition" to the Corrections Defendants' statement of material facts (Doc. No. 133). The Corrections Defendants then filed a brief in reply to James' amended response. (Doc. No. 134.) On January 22, 2018, James filed a motion to appoint counsel (Doc. No. 135), and a motion to file a limited sur-reply brief to the Corrections Defendants' reply brief (Doc. No. 138).

By Memorandum and Order dated March 23, 2018, the Court granted the motions for summary judgment, denied as moot James's motion to appoint counsel, and denied James's motion to file a sur-reply brief. (Doc. Nos. 139, 140.) James filed a timely notice of appeal. (Doc. No. 144.) In an order entered on August 23, 2018, the United States Court of Appeals for the Third Circuit dismissed James's appeal for lack of appellate jurisdiction. (Doc. No. 148.) In its order, the Third Circuit noted that James's "excessive force claims [were] still outstanding" and that this Court's "March 23, 2018 order [was] not final or otherwise appealable at [that] time." (Id.)

In an Order dated November 9, 2018, the Court ordered that this action be reopened so as to dispose of James's remaining claims. (Doc. No. 150.) The Court directed Correctional Defendants Mains, Schmerfeld, Roming, Segedy, Baker, Schoch, and Masser "to file a response to the allegations of the remaining excessive force claims within thirty (30) days." (Id.) The Correctional Defendants then filed a motion for summary judgment (Doc. No. 151) and brief in support (Doc. No. 152) on November 30, 2018. James filed a motion for extension of time to

respond to the motion for summary judgment on December 27, 2018.  (Doc. No. 154.)  In an Order dated January 7, 2019, the Court granted James's motion and directed him to file his brief in opposition on or before February 11, 2019.  (Doc. No. 154.)  James filed two briefs in opposition on February 6, 2019.  (Doc. Nos. 155, 156.)  To date, the Correctional Defendants have not filed a reply brief.  Accordingly, because the time period for filing a reply brief has expired, this motion for summary judgment is ripe for resolution.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary

judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts that give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he

is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 U.S. Dist. LEXIS 64347, at *11 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III. DISCUSSION

As noted above, James's remaining claim is that Correctional Defendants Mains, Schmerfeld, Roming, Segedy, Baker, Schock, and Masser used excessive force against him in violation of the Eighth Amendment to the United States Constitution during James's transfer to and intake at SCI Coal Township.

### A. Statement of Material Facts[2]

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from the Correctional Defendants' Rule 56.1 statement of material facts. (Doc. No. 115.)

Moreover, as previously set forth by this Court, James did not comply with M.D. Pa. L.R. 56.1 in that he failed to respond specifically to the numbered paragraphs in Defendants' statement of material facts. (Doc. Nos. 115, 119.) Rather, James filed his own statement of material facts without regard to that of the Corrections Defendants. (Doc. No. 119.) James subsequently filed an "amended response in opposition" to the Corrections Defendants' statement of material facts, and made further attempts to support his statements through citation to his verified amended complaint. (Doc. No. 133.) While a verified complaint may be treated as an affidavit in opposition to a motion for summary judgment, the allegations must be based on personal knowledge, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." See Hammonds v. Collins, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing Brooks v. Am. Broad. Co., 999 F.2d 167, 172 (6th Cir. 1993)). Accordingly, unless otherwise noted, the Court deems the

6

James was transferred from SCI Forest to SCI Coal Township on October 11, 2012. (Doc. No. 115 ¶ 6.) Defendants Mains and Schmerfeld, employees of SCI Frackville, were the transport officers for the route between SCI Smithfield and SCI Coal Township. (Id. ¶ 12.) James arrived at SCI Coal Township on October 11, 2012, at 1:15 hours. (Id. ¶ 28.) Upon arrival, Defendants Mains and Schmerfeld assisted James from the transport van. (Id. ¶ 29.) They did not use force to remove James from the van. (Id. ¶ 30.)[3] Had they done so, they would have completed a DC-121 Extraordinary Occurrence Report. (Id. ¶ 31.) After James entered the intake processing reception area, the transport officer removed his leg irons and handcuffs. (Id. ¶¶ 32-34.) Defendants Romig and Segedy were on duty in the intake area at the time. (Id. ¶ 35.) At no time did they remove James from a chair and use force against him. (Id. ¶ 40.)[4] They did not complete a DC-121 Extraordinary Occurrence Report because no force was used. (Id. ¶ 41.)

At SCI Coal Township, inmates to be housed in the RHU are seen by medical staff after being escorted to the RHU. (Id. ¶ 42.) Inmates designated to the RHU are escorted by a three (3)-person security team. (Id. ¶ 45.) When James arrived at SCI Coal Township, Defendant

---

facts set forth by the Corrections Defendants to be undisputed. See M.D. Pa. L.R. 56. 1; Fed. R. Civ. P. 56(e)(2); Bowman v. Mazur, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa. Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1.").

[3] James contends that he was unable to comply with orders to exit the transport van because he was "struggl[ing] just to remain conscious due to [his] physical pain, inability to breath[e, and] fatigue." (Doc. No. 28 ¶ 66.) He maintains that, as a result, Mains and Schmerfeld "snatch[ed]" him by the handcuffs to remove him from the van. (Id. ¶¶ 68-69.)

[4] James maintains that while in the intake area, he was having trouble standing and "broke the line formation having spotted a chair sitting off to the side of the line." (Doc. No. 28 ¶ 70.) He contends that Defendants Romig and Segedy repeatedly ordered him to stand up and return to the line. (Id. ¶¶ 71-77.) He maintains that when he did not comply with this directive, Romig and Segedy "grabbed" him out of the chair and "pinn[ed him] against the wall." (Id. ¶ 78.) He contends that while he was pinned against the wall, Defendant Masser approached and asked why he was disrupting the intake process. (Id. ¶¶ 82-83.)

7

Masser was the on-duty lieutenant for the RHU. (Id. ¶ 46.) He escorted James to the RHU and was assisted by Defendants Baker and Schoch. (Id. ¶¶ 46-47.) During the escort, James was assisted by Masser, Baker, and Schoch because "he was not especially cooperative." (Id. ¶ 49.) At no time did these Defendants use force on Plaintiff. (Id. ¶ 50.)[5]

### B. Defendants' Motion for Summary Judgment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In Estelle v. Gamble, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)); see also Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted) ("To violate the Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."). An Eighth Amendment claim includes both objective and subjective components. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. See id. The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." See id.

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000).

---

[5] James maintains that during the escort, he was unable to walk, so Masser ordered Baker and Schoch to force him to walk. (Doc. No. 28 ¶ 118.) He contends that Baker and Schoch "began to pull on [him] and physically drag [him]" to the RHU. (Id. ¶¶ 118-20.)

8

The standard governing the Court's inquiry as to whether a plaintiff has a viable excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

The issue of whether excessive force was used is one that, in proper circumstances, can be determined as a matter of law. In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain." Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 322). In making this determination, courts are tasked with evaluating the following Whitley factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Id. The United States Supreme Court has stated:

> [W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1 (1992)).

When a court considers such claims, the reasonableness of a particular use of force often depends upon the relevant factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." See Graham v. Connor, 490 U.S. 386, 396-97 (1989); see also Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir.

2000) ("[E]ven if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused . . . any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'"). Additionally, de minimis use of physical force does not qualify as excessive force unless the force is "repugnant to the conscience of mankind." See Brooks, 204 F.3d at 107 (citing Hudson, 503 U.S. at 6); see also Wilkins, 559 U.S. 34 (2010) (clarifying that de minimis force, rather than de minimis injury, is the dispositive issue). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.

Defendants have not addressed the standard set forth above. Rather, they seek summary judgment on the basis that the Court must deem their statement of material facts unopposed and because James has not submitted any evidence to demonstrate the existence of any genuine issues of material fact. (Doc. No. 152 at 6-8.) In opposition, James argues that Defendants have overlooked his amended complaint, which was sworn under the penalty of perjury and, therefore, is "competent sworn testimony for the purpose of summary judgment." (Doc. No. 156 at 4.)

The Third Circuit has indicated that a district court may treat a verified complaint as an affidavit in opposition to summary judgment. See Ziegler v. Eby, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); see also Boomer v. Lewis, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific

and based on personal knowledge."). Here, James's amended complaint contains the following verification:

> I have read the for[e]going amended complaint and hereby verify that the matters alleged herein are true[, except] as to matters alleged upon information and belief, and as to those I believe them to be true. I certify under the penalty of perjury that the for[e]going is true and correct.

(Doc. No. 28 at 66.) James further "declares under the penalty of perjury that all information enclosed in [the] 42 U.S.C. § 1983 petition/complaint is true and correct." (Id. at 67.) Thus, the Court may consider the verified statements in the amended complaint that are based on James's personal knowledge and are set forth with sufficient specificity in connection with the pending motion for summary judgment.

As indicated above, the Court has deemed the facts set forth by Defendants as undisputed, except where noted. However, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Clement, 963 F.2d at 600; White, 862 F.2d at 59; see also Pearson v. Prison Health Serv., 850 F.3d 526, 541 n.5 (3d Cir. 2017) (noting that "when deciding a motion for summary judgment, 'the evidence of the non-movant is to be believed'" (quoting Anderson, 477 U.S. at 255)). Thus, having construed the material factual disputes in favor of James, the non-movant, the Court concludes that one may reasonably infer that some force was used against James during his transfer to and intake at SCI Coal Township. However, in light of the procedural history of this case, Defendants have not addressed whether such force was excessive, and at this juncture, the Court cannot properly consider the issue of the excessiveness of such force absent briefing from the parties on this issue. Accordingly, the Court will deny Defendants' motion for summary judgment without prejudice to their right to file a renewed motion addressing James's claim in the context of the standard set forth above.

11

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 151) will be denied without prejudice.  Defendants will be permitted to file a renewed motion for summary judgment that addresses James's excessive force claim in the context of the standard set forth above.  An appropriate Order follows.

<u>s/ Yvette Kane</u>
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania