IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PARIS L. JAMES, :
      Plaintiff, :
: No. 1:14-cv-01951
v. :
: (Judge Kane)
DAVID VARANO, et al., :
      Defendants :

**MEMORANDUM**

I.     **BACKGROUND**

Pro se Plaintiff Paris L. James ("James") initiated the above-captioned action on October 8, 2014 by filing a complaint pursuant to 42 U.S.C. § 1983 against numerous employees of the Department of Corrections ("DOC") at the State Correctional Institution at Coal Township, Pennsylvania ("SCI Coal Township").[1] (Doc. No. 1.) On March 23, 2015, James filed an amended complaint. (Doc. No. 28.) In his amended complaint, James claimed that he was denied adequate medical care, subjected to substandard conditions of confinement, subjected to excessive force, and retaliated against for complaining about the quality of his medical treatment, the conditions of his confinement, and the excessive force inflicted upon him. (Id.) James further alleged that the Medical Defendants failed to provide him with adequate medical treatment for breathing difficulties. (Id.) He also claimed that the Medical Defendants conspired with other defendants to deprive inmates housed in the Restricted Housing Unit ("RHU") of proper intake examinations and access to healthcare and intentionally refused them medical care in order to reduce transportation costs from the RHU. (Id.)

---

[1] Defendants include the "Medical Defendants" (Physician Assistants Brian Davis ("Davis") and Jennifer Daya ("Daya")), and the "Corrections Defendants," who are Defendants Mains, Schmerfeld, Alleman, Romedy, Segedy, Masser, Baker, Schoch, Krzykowski, Rodriguez, Burrows, Novailis, Kratz, Hyde, Goodwin, Mosier, Tripp, and Else.

Defendants subsequently moved to dismiss the amended complaint. (Doc. Nos. 30, 31.) By Memorandum and Order dated August 31, 2016, the Court granted in part and denied in part Defendants' motions to dismiss. (Doc. Nos. 55, 56.) The Court dismissed James's conspiracy claims, equal protection claims, and claims as to his conditions of confinement, but permitted the Eighth Amendment claims of deliberate indifference to a serious medical need to proceed. (Id.) The Court also dismissed James's verbal harassment, retaliation, and conspiracy claims, with the exception of those asserted against Defendants Mosier, Tripp, and Else, and dismissed James's conditions of confinement claim and the medical care claims asserted against Defendants Varano and McCarthy on the basis of lack of personal involvement. (Id.) Accordingly, the Court discerned that the remaining claims against the Corrections Defendants were a claim for deliberate indifference to a serious medical need asserted against Defendants Mains, Schmerfeld, Alleman, Romedy, Segedy, Masser, Baker, Schoch, Krzykowski, Rodriguez, Burrows, Novailis, Kratz, Hyde, and Goodwin and a claim based on retaliation, verbal harassment, and conspiracy lodged against Defendants Moser, Tripp, and Else. The remaining claim against the Medical Defendants pertained to Plaintiff's allegation of a deliberate indifference to a serious medical need.

After the close of discovery, the Medical Defendants and the Corrections Defendants filed motions for summary judgment. (Doc. Nos. 103, 113.) By Memorandum and Order dated March 23, 2018, the Court granted the motions for summary judgment. (Doc. Nos. 139, 140.) James filed a timely notice of appeal of the Court's Memorandum and Order on April 2, 2018. (Doc. No. 144.) In an order entered on August 23, 2018, the United States Court of Appeals for the Third Circuit dismissed James's appeal for lack of appellate jurisdiction. (Doc. No. 148.) In its order, the Third Circuit noted that James's "excessive force claims [were] still outstanding"

and that this Court's "March 23, 2018 order [was] not final or otherwise appealable at [that] time." (Id.)

In an Order dated November 9, 2018, the Court ordered that this action be reopened for the purpose of disposing of James's remaining excessive force claims. (Doc. No. 150.) Accordingly, the Court directed Correctional Defendants Mains, Schmerfeld, Roming, Segedy, Baker, Schoch, and Masser "to file a response to the allegations of the remaining excessive force claims within thirty (30) days." (Id.) On November 30, 2018, the Correctional Defendants filed a motion for summary judgment (Doc. No. 151), to which James filed two briefs in opposition (Doc. Nos. 155, 156). In a Memorandum and Order dated April 15, 2019, the Court denied the motion for summary judgment without prejudice. (Doc. Nos. 158, 159.) Specifically, the Court construed the material factual disputes in favor of James and concluded that "one may reasonably infer that some force was used against James during his transfer to and intake at SCI Coal Township." (Doc. No. 158 at 11.) The Correctional Defendants had not addressed whether such force was excessive, however, and the Court declined to examine this question "absent briefing from the parties on this issue." (Id.) The Court permitted the Correctional Defendants to file a renewed motion for summary judgment within forty-five (45) days.

The Correctional Defendants filed a renewed motion for summary judgment (Doc. No. 160) and brief in support thereof (Doc. No. 161) on May 29, 2019. After receiving extensions of time to do so (Doc. Nos. 162, 163, 164, 165, 166, 169), James filed his brief in opposition and exhibits in support thereof on December 30, 2019 (Doc. Nos. 167, 168). The Correctional Defendants filed a reply brief on January 7, 2020. (Doc. No. 170.) Accordingly, their renewed motion for summary judgment is ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The

party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

5

## III. DISCUSSION

### A. Statement of Material Facts

A review of the docket in this matter reveals that the Correctional Defendants did not file a statement of material facts with their renewed motion for summary judgment. (Doc. No. 160.) The Court, therefore, adopts the following statement of material facts, as set forth in its April 15, 2019 Memorandum:

> James was transferred from SCI Forest to SCI Coal Township on October 11, 2012. (Doc. No. 115 ¶ 6.) Defendants Mains and Schmerfeld, employees of SCI Frackville, were the transport officers for the route between SCI Smithfield and SCI Coal Township. (Id. ¶ 12.) James arrived at SCI Coal Township on October 11, 2012, at 1:15 hours. (Id. ¶ 28.) Upon arrival, Defendants Mains and Schmerfeld assisted James from the transport van. (Id. ¶ 29.) They did not use force to remove James from the van. (Id. ¶ 30.)[2] Had they done so, they would have completed a DC-121 Extraordinary Occurrence Report. (Id. ¶ 31.) After James entered the intake processing reception area, the transport officer removed his leg irons and handcuffs. (Id. ¶¶ 32-34.) Defendants Romig and Segedy were on duty in the intake area at the time. (Id. ¶ 35.) At no time did they remove James from a chair and use force against him. (Id. ¶ 40.)[3] They did not complete a DC-121 Extraordinary Occurrence Report because no force was used. (Id. ¶ 41.)
>
> At SCI Coal Township, inmates to be housed in the RHU are seen by medical staff after being escorted to the RHU. (Id. ¶ 42.) Inmates designated to the RHU are escorted by a three (3)-person security team. (Id. ¶ 45.) When James arrived at SCI Coal Township, Defendant Masser was the on-duty lieutenant for the RHU. (Id. ¶ 46.) He escorted James to the RHU and was assisted by Defendants Baker and Schoch. (Id. ¶¶ 46-47.) During the escort, James was assisted by Masser, Baker, and Schoch because "he was not especially

---

[2] James contends that he was unable to comply with orders to exit the transport van because he was "struggl[ing] just to remain conscious due to [his] physical pain, inability to breath[e, and] fatigue." (Doc. No. 28 ¶ 66.) He maintains that, as a result, Defendants Mains and Schmerfeld "snatch[ed]" him by the handcuffs to remove him from the van. (Id. ¶¶ 68-69.)

[3] James maintains that while in the intake area, he was having trouble standing and "broke the line formation having spotted a chair sitting off to the side of the line." (Doc. No. 28 ¶ 70.) He contends that Defendants Romig and Segedy repeatedly ordered him to stand up and return to the line. (Id. ¶¶ 71-77.) He maintains that when he did not comply with this directive, Defendants Romig and Segedy "grabbed" him out of the chair and "pinn[ed him] against the wall." (Id. ¶ 78.) James maintains that he "struggle[d] harder to breath[e]" and that his "heart rate became much more rapid." (Id. ¶ 80.) He contends that while he was pinned against the wall, Defendant Masser approached and asked why he was disrupting the intake process. (Id. ¶¶ 82-83.)

6

cooperative." (Id. ¶ 49.) At no time did these Defendants use force on Plaintiff. (Id. ¶ 50.)[4]

(Doc. No. 158 at 7-8.)

### B. Eighth Amendment Excessive Force Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In Estelle v. Gamble, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." See Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)); see also Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted) ("To violate the Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."). An Eighth Amendment claim includes both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. See id. The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." See id.

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." See Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000). The standard governing the Court's inquiry as to whether a plaintiff has a viable

---

[4] James maintains that during the escort, he was unable to walk, so Masser ordered Baker and Schoch to force him to walk. (Doc. No. 28 ¶ 118.) He contends that Baker and Schoch "began to pull on [him] and physically drag [him]" to the RHU. (Id. ¶¶ 118-20.)

7

excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." See Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

Under proper circumstances, a court may determine the issue of whether excessive force was used as a matter of law. In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain." See Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 322). In making this determination, courts are tasked with evaluating the following Whitley factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Id. The United States Supreme Court has stated:

> [W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1 (1992)).

When a court considers such claims, the reasonableness of a particular use of force often depends upon the relevant factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." See Graham v. Connor, 490 U.S. 386, 396-97 (1989); see also Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000) ("[E]ven if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused . . . any such over-reaction would still fall short of

8

supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'"). Additionally, de minimis use of physical force does not qualify as excessive force unless the force is "repugnant to the conscience of mankind." See Brooks, 204 F.3d at 107 (citing Hudson, 503 U.S. at 6); see also Wilkins, 559 U.S. 34 (2010) (clarifying that de minimis force, rather than de minimis injury, is the dispositive issue). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." See Hudson, 503 U.S. at 9.

In the instant case, James alleges that the Correctional Defendants used force against him on three (3) occasions: (1) during his exit from the transport van; (2) while he was waiting to be processed in the reception area at SCI Coal Township; and (3) during his escort from the reception area to the RHU. (Doc. No. 28 ¶¶ 66, 68-69, 70-83, 118-20.) The Court addresses each incident in turn.

### 1. Exit from the Transport Van

James avers that upon arrival at SCI Coal Township, he was unable to comply with orders to exit the transport van because he was "struggl[ing] just to remain conscious due to [his] physical pain, inability to breath[e,] [and] fatigue." (Doc. No. 28 ¶¶ 66.) He maintains that, as a result, Defendants Mains and Schmerfeld "snatch[ed]" him by the handcuffs to remove him from the van. (Id. ¶¶ 68-69.)

Upon consideration of the Whitley factors set forth above, the Court concludes that James cannot maintain a claim for excessive force regarding the incident in the transport van. James's own averment that he was unable to exit the van on his own supports a finding that some force was necessary to remove him from the van. As to the amount of force used and the extent of injury inflicted, nothing in the record supports a conclusion that Defendants Mains and Schmerfeld caused James pain or injury by "snatching" him by the handcuffs. Furthermore,

9

while it does not appear that James posed a risk of injury to others, "the involved prison employees reasonably understood that [his] refusal to stand and walk on his own necessitated some use of physical contact to effectuate his custodial transfer from the transport van to" the processing area inside SCI Coal Township. See Green v. Ferdarko, No. 15-45, 2017 WL 9285187, at *8 (W.D. Pa. Dec. 6, 2017), report and recommendation adopted, 2018 WL 2009087 (W.D. Pa. Apr. 30, 2018). Finally, there is no evidence of record that would support a finding that the force used by Defendants Mains and Schmerfeld was malevolent so as to establish an Eighth Amendment violation. See Wilkins, 559 U.S. at 37-38.

In his oppositional brief, James argues that the Correctional Defendants "have neglected to mention that not only was Plaintiff shackled [and] handcuffed he was additionally secured by a black box around the handcuffs locked in a fixed football wrist over wrist position which is to limit any mobility." (Doc. No. 167 at 13.) James maintains further that there were no other inmates remaining in the transport van and that there were no less than seven (7) corrections officers present when he was removed from the van. (Id. at 14.) James suggests that the Court should not grant summary judgment because these averments create genuine issues of material fact. (Id.) These averments, however, are not supported by any evidence in the record before the Court. Moreover, "[s]tatements, arguments, and assertions of fact in briefs in opposition to a motion for summary judgment are insufficient to create a genuine issue of material fact." See Berkshire Life Ins. Co. v Aiello, No. 88-7927, 1989 WL 98453, at *2 (E.D. Pa. Aug. 21, 1989) (citations omitted). James's arguments are simply insufficient to demonstrate a genuine issue of fact as to the alleged use of excessive force against him. Thus, the Court will grant summary judgment to the Correctional Defendants as to James's excessive force claim regarding his exit from the transport van.

10

### 2. Incident in the Reception Area

James next takes issue with an incident that occurred while he was waiting to be processed in SCI Coal Township's reception area. The parties agree that Defendants Romig and Segedy were on duty at that time. (Doc. No. 115 ¶ 35.) James maintains that while in the reception area, he was having trouble standing and "broke the line formation having spotted a chair sitting off to the side of the line." (Doc. No. 28 ¶ 70.) He contends that Defendants Romig and Segedy repeatedly ordered him to stand up and return to the line, and that when he did not comply, they "grabbed" him out of the chair and "pinn[ed him] against the wall." (Id. ¶¶ 71-78.) While he was pinned against the wall, Defendant Masser approached him and asked why he was disrupting the intake process. (Id. ¶¶ 82-83.)

Upon consideration of the Whitley factors, the Court concludes that James has put forth no evidence of record to demonstrate that excessive force was used against him during this incident, and, therefore, Defendants are entitled to judgment as a matter of law on this claim. Again, James's own averments that he "broke the line formation" and then refused orders to get up from the chair and return to the line support a finding that the use of some force as to James was necessary to ensure that he complied with the directives he was given. See Blount v. Echols, No. 07-5046, 2008 WL 4368936, at *8 (W.D. Ark. Sept. 24, 2008) (concluding that pretrial detainee could not maintain excessive force claim because, inter alia, the use of some force was reasonable "given [plaintiff's] failure to obey the orders of the deputies"). As for injury, James avers that he had trouble breathing and that his heart rate "became much more rapid." (Doc. No. 28 ¶ 80.) Even so, nothing in the record supports a finding that Defendants Romig and Segedy "maliciously and sadistically use[d] force to cause harm" to James. See Wilkins, 559 U.S. at 38.

Thus, the Court will grant summary judgment to the Correctional Defendants as to James's excessive force claim regarding the incident in the reception area.

### 3. Escort from the Reception Area to the RHU

Finally, it is undisputed that James "was not especially cooperative" during his escort to the RHU and, therefore, had to be assisted by Defendants Masser, Baker, and Schoch. (Doc. No. 115 ¶ 49.) James maintains, however, that he was unable to walk during the escort, and consequently, Defendant Masser ordered Defendants Baker and Schoch to force him to walk. (Doc. No. 28 ¶ 118.) He avers that Defendants Baker and Schoch "began to pull on [him] and physically drag [him]" to the RHU. (Id. ¶¶ 118-20.)

Again, consideration of the Whitley factors does not lead the Court to conclude that Defendants Masser, Baker, and Schoch used excessive force against James. As noted supra, James's own averment that he was unable to walk, as well as the admission that he was not cooperative, supports a finding that some force was necessary to escort him to the RHU. Further, James has pointed to no relevant evidence of record that would suggest that Defendants Masser, Baker, and Schoch caused James pain and injury during the escort. While James may not have posed a risk of injury to others, Defendants Masser, Baker, and Schoch reasonably concluded that some physical contact was necessary in order to get James to the RHU. See Green, 2017 WL 9285187, at *8; see also Pamplin v. Coulter, No. 10-227, 2012 WL 1971297, at *8 (W.D. Pa. June 1, 2012) (granting summary judgment to defendants as to prisoner plaintiff's Eighth Amendment excessive force claim alleging that he was dragged to the RHU where the plaintiff had not demonstrated that "the manner in which he was escorted was malicious or sadistic for the purpose of causing harm"). Finally, there is no evidence in the record before the Court from which a reasonable factfinder could conclude that the force used by Defendants

12

Masser, Baker, and Schoch was malevolent for purposes of the Eighth Amendment.  See

Wilkins, 559 U.S. at 37-38.  Accordingly, the Court will grant summary judgment to the

Correctional Defendants as to James's excessive force claim regarding his escort to the RHU.

## IV. CONCLUSION

For the foregoing reasons, Defendants' renewed motion for summary judgment (Doc. No. 160) will be granted.  An appropriate Order follows.